Reuben H. RANSOM, Appellant,

v.

Vic HANER, Marion Keyes, et al., Appellees.

No. 37.

Supreme Court of Alaska.

May 16, 1961.

P. M. Barceloux, R. M. Watt, and Jordon N. Peckham, of Goldstein, Barceloux & Goldstein, Chico, Cal., and Thomas B. Stewart, Juneau, for appellant.

Robert Boochever, of Faulkner, Banfield & Boochever, Juneau, for appellees Vic Haner and Marion Keyes.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

On January 16, 1959, Reuben H. Ransom, as plaintiff, filed his complaint in the district court against the defendants Vic Haner, Marion Keyes and Does I to V, alleging (1) that he was employed by the Ketchikan Pulp Company and the American Viscose Company to work as a machinist's helper, (2) that the defendant Vic Haner was the general superintendent and the de-

fendant Marion Keyes was the assistant superintendent and foreman for the two companies, (3) that defendants Haner and Keyes were negligent in directing plaintiff to manually stack heavy steel shafts, and (4) that as a proximate result of said negligence the plaintiff suffered an injury to his lower back to his damage in the sum of $100,000.

Haner and Keyes moved to dismiss the action "for the reason that the complaint fails to state a claim upon which relief can be granted, and for the further reason that plaintiff's exclusive remedy lies under the provisions of the [Alaska] Workmen's Compensation Act." In a written opinion the trial court addressed itself only to the "exclusive remedy" issue and denied the motion to dismiss, holding that, under the Compensation Act,[1] any co-employee whether in a supervisory capacity or otherwise would be a third party and "someone other than the employer" against whom an action for damages for negligence in causing an injury arising out of and in the course of employment could be maintained.[2]

On July 13, 1959, plaintiff filed an amended complaint naming as additional defendants the two company employers already mentioned herein and Fireman's Fund Indemnity Company, and also one Donovan Westland who had been named in the original complaint as Doe I. The three companies were joined as defendants solely for a determination of the extent to which they were entitled to subrogation to plaintiff's rights against Haner and Keyes for any workmen's compensation benefits paid by the companies to the plaintiff in connection with his alleged injury.

The amended complaint reasserted that plaintiff's injury was proximately caused by the negligence of the defendants Haner and Keyes in ordering the plaintiff to manually lift heavy steel shafts. Other specific acts of negligence charged against Haner and Keyes by the plaintiff were failure to provide the plaintiff with a safe place in which to work, failure to repair a certain crane and track necessary for the moving and hoisting of heavy steel shafts, and failure to provide proper equipment for the plaintiff with which to perform the tasks assigned. Haner and Keyes each filed a motion and affidavits for summary judgment. The plaintiff filed his affidavit in opposition.

■ On February 9, 1960, the district court, 25 F.R.D. 84, 86, entered a summary judgment in favor of the movants, Haner and Keyes, dismissing the case as to them. It is apparent from the court's memorandum opinion, contained in the record, that its decision is based upon the conclusions that the alleged negligent acts of the defendants, even if true, amounted to "no more than nonfeasance," and that, "since a vice-principal is not liable to a servant for nonfeasance" as a matter of law,[3] no real cause of action existed against Haner and Keyes. The court then reasoned that, since the plaintiff had not stated a cause of action against Haner and Keyes, no genuine issue as to a material fact in this case existed and the movants were, therefore, entitled to a summary judgment as a matter of law.[4]

---

1. The provisions of the Alaska Workmen's Compensation Act pertinent to this case are contained in section 43–3–30, ACLA 1949, and are also set forth on page 285, infra.

2. Ransom v. Haner, D.C.D.Alaska 1959, 174 F.Supp. 82.

3. In support of its declaration concerning the legal test of liability in negligence actions between a servant and his vice-principal, the court cites Macutis v. Cudahy Packing Co., D.C.D.Neb., Omaha D.1913, 203 F. 291 and Morefield v. Ozark Pipe Line Corporation, D.C.N.D.

Okl.1928, 27 F.2d 890. In the latter case the appellate court stated:
"The great weight of authority establishes the rule that, where the allegations of a petition charge no more than nonfeasance or mere omission on the part of the resident superintendent or foreman to perform the master's duty as to inspection and repairs, such defendant is not liable to the plaintiff." 27 F.2d at page 891.

4. Under the Federal Rules of Civil Procedure which were in effect in Alaska

The plaintiff has appealed from this judgment.

We fail to find in plaintiff's brief any specification of errors upon which he intends to rely, as required by Rule 11(6) of this court. He does state in his brief, however, that he has organized his argument on appeal under two major topics: "A. Defendants and each of them were actually guilty of so-called 'misfeasance' in the premises which caused injury to plaintiff;" and "B. If any rule of nonliability for 'nonfeasance' exists at all, it is applicable solely to an agent who fails to enter upon the duties for which he has been engaged; and once the agent commences to perform the duties of his position, he is liable for his own negligence to other employees, regardless of whether it is for negligent acts or negligent omissions." For the purposes of this opinion we shall regard these "topics" as assignments of error.

▮▮▮ The defendants in their brief urge upon us two other questions that we should consider here, though not raised by them or considered by the trial court in the hearing on the motion for summary judgment. The first question is whether the plaintiff assumed the risk of any injury in the performance of his work under the circumstances set forth in the complaint and amplified by the affidavits; and the second question is whether the plaintiff's exclusive remedy was under the Alaska Workmen's Compensation Act. In this connection the defendants argue that, if there are any grounds for upholding the summary judgment on their behalf, regardless of whether they are the grounds set forth by the trial judge, the judgment should be affirmed. We agree, for it is a rule of law that an appellee may urge, and the appellate court should

consider in defense of a decree or judgment any matter appearing in the record, even if rejected below and even if appellee's argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.[5]

Based upon the issues thus raised by the parties to this appeal, we consider the questions presented for our determination to be:

I. Does the complaint fail to state a claim for which relief can be granted for the reason that (1) the defendants Haner and Keyes are protected under the Workmen's Compensation Act against common law liability to the plaintiff; or (2) the claim alleges facts of nonfeasance only for which a vice-principal is not liable to a servant; or (3) the allegations of the complaint show that, as a matter of law, the plaintiff assumed the risk of injury?

II. May the summary judgment be affirmed on the ground that the pleadings considered together with the affidavits show that there is no genuine issue of fact with respect to (1) alleged negligent acts of the defendants, or (2) plaintiff's assumption of risk?

Section 43–3–30, A.C.L.A.1949, which is a part of the Alaska Workmen's Compensation Act applicable to this case provides that

"Where the injury for which compensation is payable hereunder was caused under circumstances creating a legal liability *in someone other than the employer* to pay damages in respect thereof, the employee may take proceedings against the one so liable to pay damages and against anyone liable to pay compensation under this Act, but shall not be entitled to receive both damages and compensation * * *." (Emphasis added.)[6]

during the time the lower court had jurisdiction of this case, a summary judgment may be granted either on the ground that no claim was stated for which relief could be granted, or on the ground that no genuine issue of fact existed. Fed.R.Civ.P. rules 12(b), 56 (c), 28 U.S.C.A. The trial court seems to have considered both of these grounds as a necessary basis for its summary

judgment. Such being the case, both grounds will have to be considered by this court. See Lane Bryant, Inc. v. Maternity Lane, 9 Cir., 1949, 173 F.2d 559, 562.

5. See 7 Moore, Federal Practice, para. 72.-05, at 3010–3012 (2d ed. 1955) and cases cited in note 5 therein.

6. In support of their contention that the plaintiff's exclusive remedy was under

Defendants contend that a fellow employee, also referred to as a supervisory employee or vice-principal, may not be regarded as a third party, i. e., "someone other than the employer," under the foregoing section of the act, and that therefore the plaintiff's exclusive remedy in this case is for compensation from the employer under the act and not by way of a common law action for damages against the fellow employees. The defendants have cited us to only four jurisdictions in which it is now squarely held that a fellow employee is not "someone other than the employer" within the meaning of the compensation law.[7] There are other courts holding that the exclusive remedy of an employee injured by a fellow employee is under the Workmen's Compensation Act.[8] The decisions of those courts, however, were usually based upon a more restrictive wording of the applicable state compensation act under consideration in respect to common law liability of third persons to the injured employee.[9]

Another line of authority holds that, under compensation acts containing a provision such as appears in section 43–3–30, ACLA 1949, immunity to common law suit

---

the Workmen's Compensation Act, defendants also rely upon that portion of the act which provides that

"The right to compensation for an injury and the remedy therefor granted by this Act shall be in lieu of all rights and remedies as to such injury now existing either at common law or otherwise, and no rights or remedies, except those provided for in this Act, shall accrue to employees entitled to compensation under this Act while it is in effect; * * *." § 43–3–10, ACLA 1949.
Defendants fail to specify how this portion of the act supports their position. We regard it as being applicable to the liability of only the employer to an injured employee, for it must be read in connection with section 43–3–30, ACLA 1949 of the act which speaks of the liability of "someone other than the employer."

7. Bresnahan v. Barre, 1934, 286 Mass. 593, 190 N.E. 815; White v. Ponozzo, 1955, 77 Idaho 276, 291 P.2d 843; Majors v. Moneymaker, 1954, 196 Tenn. 698, 270 S.W.2d 328; Ginnis v. Southerland, 1957, 50 Wash.2d 557, 313 P.2d 675. The courts of Ohio and West Virginia once belonged to this category, see Landrum v. Middaugh, 1927, 117 Ohio St. 608, 160 N.E. 691 and Hinkelman v. Wheeling Steel Corp., 1933, 114 W.Va. 269, 171 S.E. 538; but they both reversed themselves in subsequent decisions—Ellis v. Garwood, 1958, 168 Ohio St. 241, 152 N.E.2d 100 and Tawney v. Kirkhart, 1947, 130 W.Va. 550, 44 S.E. 2d 634.

8. Hayes v. Marshall Field & Co., 1953, 351 Ill.App. 329, 115 N.E.2d 99; Warner v. Leder, 1952, 234 N.C. 727, 69 S.E. 2d 6; Kowcun v. Bybee, 1947, 182 Or. 271, 186 P.2d 790. The reasoning of some of the courts who follow the rule of these cases is that a co-employee acting within the scope of his employment is the agent of the master, and so his acts and conduct become the acts and conduct of the master who is exempt from damages at law under the compensation statute. "Thus, the co-employee becomes merged in the employer and is not a third person, within the meaning of the compensation law, against whom a damage action may be maintained." See White v. Ponozzo, supra note 7, 291 P.2d at page 845; Ginnis v. Southerland, supra note 7, 313 P. 2d at page 676.

9. See Kowcun v. Bybee, supra note 8, 186 P.2d at pages 795 and 799, in which the Oregon Supreme Court observed:

"There are several scores of decisions rendered by the courts of various jurisdictions upon the question of whether or not a workman, who negligently injures a fellow workman, is rendered immune from liability by the Workmen's Compensation Law which his employer had embraced. The difference in the results is not due to a difference in judicial interpretation of like statutes, but to the fact that the provisions of the statutes bearing upon this issue vary * * *.

* * * * *

"We now revert to the controlling words of our own act which are, 'a third person not in the same employ.' We saw from the Pennsylvania and Wisconsin decisions that an employee is normally deemed a third person when sued by a coemployee * * *.

* * * * *

"It seems evident that by adding the phrase, 'not in the same employ,' after the term, 'a third person,' our legislature sought to avoid the effect of the Pennsylvania and Wisconsin decisions * * *."

is extended only to the employer, and an injured employee can therefore *sue* his own coemployee for the latter's negligence.[10] This is definitely the majority rule and it is based upon such grounds as we find expressed by the West Virginia court in Tawney v. Kirkhart: [11]

"* * * There is no contract between coemployees and they are subject to the provisions of the compensation act in their relationship with each other in no way. They pay nothing into the fund that entitles them to protection under its terms. We can perceive nothing in sound reasoning that would entitle a coemployee to gratuitous protection for his own misconduct. To hold that a coemployee is not liable for his own negligence would increase the hazard of employments and be contrary to public policy. We have been able to find nothing apart from an express constitutional or statutory provision such as exists in New York, Texas, Massachusetts and Virginia that would entitle him to an exemption from liability * * *."

■ The sizeable number of the majority alone would not persuade us, but sound reasoning in support of the view, such as we find expressed in Churchill v. Stephens,[12] does:

"It is said that the defendant is not a 'third person,' within the meaning of the act. We see no reason for attributing to the words 'third person' any other meaning than the usual one. It must mean, as indeed the subsequent language of the section makes perfectly plain, a person other than the employer or employé." [13]

■ We hold, therefore, that under section 43–3–30, ACLA 1949 a fellow employee is not immune to a suit by an injured employee. To declare otherwise would require us to assume the prerogative of the legislature.

■ Defendants next argue that the acts of negligence charged against them— failure to maintain the crane in good order and failure to provide a safe place in which to work—constituted nonfeasance but not misfeasance, and that for acts of nonfeasance they, as agents or supervisory employees, are not liable at law, especially where, as in their case, there was no specific assumption of a particular duty involved. For this court to hold otherwise, they say, would place an insufferable burden upon supervisory employees in the complex industrial world of today.

The plaintiff, on the other hand, contends that there is no rational basis for a dis-

10. Martin v. Theockary, 5 Cir., 1955. 220 F.2d 900; Singleton v. Bonnesen, 1955, 131 Cal.App.2d 327, 280 P.2d 481; Stulginski v. Cizauskas, 1939, 125 Conn. 293, 5 A.2d 10; Frantz v. McBee Co., Fla.1955, 77 So.2d 796; Kimbro v. Holladay, La.App.1934, 154 So. 369; Webster v. Stewart, 1920, 210 Mich. 13, 177 N.W. 230; Sylcox v. National Lead Co., 1931, 225 Mo.App. 543, 38 S.W.2d 497; Churchill v. Stephens, 1917, 91 N.J.L. 195, 102 A. 657; Rehn v. Bingaman, 1949, 151 Neb. 196, 36 N.W.2d 856; Tscheiller v. National Weaving Co., 1938, 214 N.C. 449, 199 S.E. 623; Zimmer v. Casey, 1929, 296 Pa. 529, 146 A. 130; Tawney v. Kirkhart, 1947, 130 W.Va. 550, 44 S.E.2d 634; McGonigle v. Gryphan, 1930, 201 Wis. 269, 229 N.W. 81.
11. 44 S.E.2d at page 641.
12. 1917, 91 N.J.L. 195, 102 A. 657, 658.

13. See also 2 Larson, Workmen's Compensation Law, § 72:10 (1952) wherein the writer states at pages 171, 172:
"Under most statutes, immunity to common law suit is extended only to the employer. An injured employee can therefore sue his co-employee for the latter's negligence * * *. This result has been supported by reference to the plain language of the statute, by the argument that existing rights of action should not be deemed destroyed in the absence of clear language, by calling upon the moral principle that a tortfeasor should not be relieved of the consequences of his wrongdoing, and by stressing the danger to workmen themselves of a doctrine that persons engaged in dangerous occupations should be immune from the consequences of their negligence * * *."

tinction between nonfeasance and misfeasance in this case unless the defendants were claiming that they had never entered upon their contract with their employers to manage and operate the plant. In support of his contention, he quotes from the Restatement of Agency as follows:

"An agent who, by promise or otherwise, undertakes to act for his principal under such circumstances that some action is necessary for the protection of the person or tangible things of another, is subject to liability to the other for physical harm to him or his things caused by the reliance of the principal or of the other upon his undertaking and his subsequent unexcused failure to act, if such failure creates an unreasonable risk of harm to him and the agent should so realize." [14]

We consider the rule as just stated to be good law,[15] and will apply it to the facts and circumstances of this case. Once the defendants Haner and Keyes actually undertook and entered upon the execution of their supervisory and operational duties at the plant, an admitted fact in this case, it became their duty to exercise reasonable care in the manner of execution so as not to cause any injury to the plaintiff. If they failed to provide a safe place to work for the plaintiff or failed to furnish him with safe and proper equipment for his work, they cannot exempt themselves from liability to him for their negligence. The plaintiff was entitled to rely upon the expectation that Haner and Keyes, as supervisory employees, would fulfill the master's responsibility of furnishing him, the plaintiff, with a safe place in which to work and with safe and proper equipment for doing his work. Accordingly, it was error for the lower court to hold that the alleged negligent acts of the defendants, even if true, amounted to nonfeasance only, for which a supervisory employee is not liable to an injured employee.

■■■■■ We address ourselves next to the question of whether the allegations of the complaint show that, as a matter of law, the plaintiff assumed the risk of injury. While at common law an employee by his very contract of employment assumes the ordinary risks of the employment or such as are incident thereto,[16] carelessness and negligence on the part of the employer or his vice-principal are not incidents of an employment.[17] Of course, if the injured

---

14. 2 Restatement (Second), Agency § 354 (1958); see also comments a and b under section 354, relating to "Reliance upon agent's undertaking" and "Nonfeasance," respectively.

15. In explanation of Section 354, the reporter's note set forth in 3 Restatement (Second) Agency, Appendix, at page 588, reads:
"At the time the above statement was made in 1932, there were more cases contrary to the statement than were in accord with it. Since that time, however, the current of authority has swung very strongly in favor of the Restatement rule. It is believed that this change results from a better understanding by the courts of basic tort principles. The fundamental theory of torts is that one should pay for the harm which he causes others, usually when he is at fault. Obviously one who promises and fails to perform may or may not be at fault, but if he causes some one to rely upon his undertaking and thereafter fails to perform without excuse, he has

caused harm and hence comes within the basic principle of the law of torts. In effect he is guilty of misleading conduct as long as the promisee has reason to believe that the promise will be performed * * *."

16. Ehrenberger v. Chicago, R. I. & P. R. Co., 1918, 182 Iowa 1339, 166 N.W. 735, 10 A.L.R. 1388; Annotation 49 A.L.R.2d 323 (1956, domestic servant); Annotation 67 A.L.R.2d 1141 (1959, farm servant).

17. Boatman v. Miles, 1921, 27 Wyo. 481, 199 P. 933, 26 A.L.R. 864, in which it was held that the ordinary risks which are assumed by a servant are those existing after the master has done everything that he is bound to do for the purpose of securing the safety of his servant.
For an expression of the view that the employer is liable for the acts of his vice-principal, see Farnon v. Silver King Coalition Mines Co., 1917, 50 Utah 295, 167 P. 675, 9 A.L.R. 248; Larson v.

employee has actual or constructive knowledge of the failure of the employer to perform his primary duty of furnishing a reasonably safe place of employment and appliances or tools, and of the attendant perils, and then continues in the employment without protest, he may be barred of recovery for injuries.[18]

In the instant case, the plaintiff alleged in his complaint that the defendants, as supervisory employees of Ketchikan Pulp Company and American Viscose Company, negligently ordered and required him to perform work which defendants knew or should have known to be dangerous and unsafe, and that he objected to doing the work in the manner required of him and told Donovan Westland, his foreman, that the work was dangerous and unsafe, but to no avail. The pleading is sufficient against the charge that it shows on its face an assumption of risk by the plaintiff.

Thus, in answer to the first general question presented on this appeal, we find that the complaint does state a claim for which relief can be granted. That leaves for our determination the question of whether the summary judgment may be affirmed on the ground that the pleadings *considered together with the affidavits* show that there is no genuine issue of fact with respect to (1) alleged negligent acts of the defendants, or (2) plaintiff's assumption of risk.

The purpose of summary judgment, authorized by Rule 56, Federal Rules of Civil Procedure, is to allow the court to dispose summarily of a case where the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Its purpose is not to cut off litigants from their right to trial by jury on genuine issues of fact.[19] Even though there may be considerable doubt as to the existence of a claim or defense, if it appears to be in good faith the party asserting it is entitled to a trial and an opportunity to examine the case or defense of his adversary in the usual course.[20]

In the case under consideration, we have only the complaint and the affidavits of the parties to look to for an answer to the question presented. The allegations of the complaint, here material, are as follows: (1) Defendants Haner and Keyes were persons having direct management, control and custody of plaintiff, plaintiff's employment and plaintiff's place of employment; (2) they negligently ordered plaintiff to perform work which was dangerous; (3) they negligently failed to provide adequate and proper power equipment—a crane; (4) they negligently installed a track for the crane and negligently kept and maintained the crane and track; (5) they knew or should have known that the place in which the plaintiff was required to work and the equipment furnished him for his work was inadequate, dangerous, and likely to injure the plaintiff; and (6) although plaintiff objected and gave notice to the defendants of the dangers attendant upon his employment, they negligently directed him to proceed with his work.

On the defendant's motion for summary judgment, we must accept the allegations of the complaint as true,[21] especially where no answer has been filed,[22] unless by the

Alaska S.S. Co., 1917, 96 Wash. 665, 165 P. 880, L.R.A.1917F, 671.

18. Annotation 67 A.L.R.2d 1142 (1959); 2 Restatement (Second) Agency § 521 (1958).

19. Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967; Surkin v. Charteris, 5 Cir., 1952, 197 F.2d 77.

20. Arnstein v. Porter, 2 Cir., 1946, 154 F. 2d 464.

21. Harris v. Railway Express Agency, Inc., 10 Cir., 1949, 178 F.2d 8.

22. Rogers v. Girard Trust Co., 6 Cir., 1947, 159 F.2d 239.

affidavits it appears otherwise beyond genuine controversy.[23] Collectively the affidavits filed by the defendants in support of their motion for summary judgment set forth that (1) The defendants were supervisory employees of Ketchikan Pulp Company; (2) they never ordered or required the plaintiff to perform the work alleged in his complaint as being dangerous; (3) the crane and track had been earlier repaired and were in excellent operating order on the date that the plaintiff was injured; (4) it had never been reported to them and they had no knowledge that the crane or track was inadequate, defective and dangerous, or that the place of plaintiff's employment or the processes he was expected and ordered to use in the performance of his work were dangerous and hazardous; (5) plaintiff was actually provided a safe place in which to work and the processes he was expected to use and did use in his work were not dangerous or hazardous; and (6) another fellow employee, Crawford, who worked directly with the plaintiff on the day of the alleged injury, was not aware of any injury received by the plaintiff, nor did the plaintiff complain of any injury to himself on that day.

In an answering affidavit, the plaintiff under oath, reaffirmed as true, of his own personal knowledge, all the allegations of his complaint. Then he specifically added that (1) Defendant Keyes visited the room in which plaintiff worked at least once each day and observed the type of work he was doing there and the unsafe condition of the floor room because of the "chaotic jumble of steel shafts"; (2) Donovan Westland was the foreman who actually gave work orders to the plaintiff, but Westland was under the control and supervision of the defendants Haner and Keyes; (3) the crane was out of level and in an unsafe condition on the day of plaintiff's injury; (4) defendant Haner, as resident manager of the plant, knew or should have known of the dangerous conditions and equipment mentioned; and (5) immediately after his injury, plaintiff told his fellow employee, Crawford, of the injury to his back and Crawford even insisted that plaintiff obtain medical care.

In these allegations of the complaint and the affidavits we find not only one but several genuine issues of fact, including the inferential issue of whether the plaintiff had assumed any ordinary and incidental risks of his employment. Every material fact as to his injury raised by the plaintiff in his complaint seems to have been controverted by the affidavits furnished on behalf of the defendants and then reasserted by the plaintiff in his rebuttal affidavit. In the face of such a state of the record, we cannot say, as a matter of law, that here there is no genuine issue as to any material fact. The burden of showing the absence of a genuine issue of material fact was upon the defendants as the moving parties [24] and that they have failed to do. It was error, therefore, for the trial court to enter a summary judgment against the plaintiff.

The judgment is reversed and the case is remanded for further proceedings in conformity with this opinion.

23. McCombs v. West, 5 Cir., 1946, 155 F.2d 601; Suckow Borax Mines Consolidated v. Borax Consolidated, 9 Cir., 1950, 185 F.2d 196, 205.

24. The complete absence of any genuine issue must be apparent upon the face of the record and all doubts with respect thereto must be resolved against the moving party. Zig Zag Spring Co. v. Comfort Spring Corp., D.C.D.N.J.1950, 89 F.Supp. 410.